[No. B042144. Second Dist., Div. Five. Feb. 21, 1991.]

THE PEOPLE, Plaintiff and Respondent, v.
CHRISTOPHER DONALD WILSON, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part V.

**COUNSEL**

Robert F. Howell, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Edward T. Fogel, Jr., Thomas L. Willhite, Jr., and Kristofer Jorstad, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

ASHBY, Acting P. J.—By nonjury trial appellant Christopher Donald Wilson was found guilty of residential burglary. (Pen. Code, § 459.) The court also found true the allegation that appellant was previously convicted of a serious felony, residential burglary. (Pen. Code, § 667, subd. (a).) The court sentenced appellant to a term of seven years in state prison, consisting of a low term of two years for burglary plus five years pursuant to Penal Code section 667. Appellant was on probation for the prior burglary at the time he committed the new burglary. The court revoked appellant's probation and sentenced appellant to a midterm of four years on the prior, to be served concurrently with appellant's term for the new burglary. Appellant appeals from the judgments in both cases.

The present burglary occurred July 21, 1988. The victim, Paula Currey, left her home at 7 a.m.; when she returned at 3 p.m., the doors were open and police officers were present. Property was missing, including five pieces of gold jewelry, two videotapes and a video head cleaner. She did not give permission to appellant to enter her house or take this property.

Los Angeles Police Officer Mike Snowden observed appellant exiting the back door of the victim's house about 2 p.m. Appellant was carrying a bottle in one hand and videotapes in the other, which he stuffed into his waist band. Appellant went around the house to the front, but when appellant saw Officer Snowden appellant threw the videotapes on the lawn and ran away. Appellant tried to hide in the neighborhood but was apprehended with the aid of police dogs. Shortly after his arrest and advice and waiver of his rights, appellant told Los Angeles Police Officer James Panek, "I am friends with the lady's son that lives at that house. I took off work today. I was a visitor there a few months ago. I know she leaves the back door open, so today I went there inside and took some gold jewelry, chains and video-tapes. I fought and ran from the officers. I hid under a tarp and was going to stay there until dark."

At trial appellant presented a defense that at the time he entered the house he lacked intent to steal and was therefore guilty only of theft, not burglary. Appellant testified on his own behalf and called the victim, Paula Currey, as a defense witness.[1] Paula Currey testified that she knew appellant prior to the burglary and had at some prior time been intimate with appellant. She tried to terminate their relationship but on occasion appellant would drop by her house and try to talk about their future. On cross-examination by the prosecution, however, she stated: appellant had no permission to come to her house on the date of the burglary; appellant was familiar with her work schedule and her car, which she normally parked in front of the house; when she left for work that morning she took the car; she did not leave the back door unlocked.

Appellant testified he was at his home until about 11:30 a.m. drinking alcohol and smoking marijuana. He had four 20-ounce Budweisers and whiskey. He decided to go to the victim's house to talk to her about their relationship. He was frustrated and hurt because she had told him she had another boyfriend, and he had not seen her in three weeks. He wanted to talk to her to see if they could get back together. When he arrived at her house he knew she was not home because her car was not in front. He went to the back gate which was open. Then, "I don't know what made me do it,

---

[1] The cause was submitted on the transcript of the preliminary hearing plus additional testimony at the time of trial.

but I went to the back door, and the back door opened right up, and I had been drinking. I went straight in and I went drinking out of the refrigerator some more." Appellant "was waiting for her, and I don't—remember a lot of what happened after that. I was—I was really intoxicated." Appellant had no recollection of removing a wine cooler from the refrigerator or the videotapes from the house. He could not remember exactly what he was thinking when he entered the back door. Appellant had no recollection of telling Officer Panek that he knew the back door would be open, entered Currey's house, and took gold jewelry and videotapes. He explained that when he talked to Officer Panek he was in "shock" because he had been bitten by police dogs during his capture. Officer Panek subsequently testified appellant had been bitten by a dog and that appellant showed "signs of alcohol or drug ingestion" during their conversation.

On cross-examination by the prosecution, appellant was questioned about his prior burglary of the residence of Wanda Michaels in 1987. He testified he was acquainted with Michaels before that burglary because he had done handiwork for her at her house. He entered Michaels's house while he knew she was not home, but felt he "was going over there to wait for her." During the prior case he had also claimed he was intoxicated on alcohol and cocaine when he entered Michaels's house.

## CONTENTIONS

Appellant contends (1) that the trial court's remarks show the court improperly utilized appellant's prior burglary as evidence of the new burglary; (2) that the court failed to fix the degree of the new burglary, thereby rendering it second degree as a matter of law; (3) that the prior burglary was not a "previous" conviction within the meaning of Penal Code section 667, subdivision (a), because appellant was on probation for the prior when he committed the new burglary; (4) that the concurrent sentence of four years on the prior burglary was improper because the court subsequently determined the prior burglary was of the second degree; and (5) that the court incorrectly awarded credit for time in custody. We reject appellant's first three contentions. There is merit to appellant's fourth and fifth contentions and we shall modify the judgment accordingly.

### I

#### PRIOR BURGLARY AS EVIDENCE

Appellant contends the trial court's remarks at the time of finding appellant guilty show that the court improperly utilized appellant's prior burglary to infer criminal disposition or propensity. (Evid. Code, § 1101,

subd. (b).) There is no merit to this contention. The record shows that the circumstances of the prior were properly admitted and utilized by the court to show appellant's intent at the time of entry, the issue raised by his defense.

Appellant cites the following statement by the court. "It seems to me using—*the use of the priors here has a couple of purposes. First of all, it is for impeachment purposes, but it also shows intent because of the same kind of M.O. It adds that element since he did apparently a very, very similar thing with the other woman that he knew.* His statement to the officer indicates that [he had] intent to steal when he entered. The fact that Mrs. Currey said that the residence was locked indicates an intent to steal, because he would have had somehow to force entry. The fact he went at that time when she was normally at work really negates his statement that he went to talk to her, and it is tough because he has obviously got a lot of problems, but I think that the elements are all there for the residential burglary. I will find him guilty, and I also will find that the prior has been proven beyond a reasonable doubt." (Italics added.)

First, contrary to appellant's contention, nothing in the court's remarks suggests the court improperly inferred criminal disposition or propensity. The court clearly stated the evidence "shows intent." Other crimes evidence is properly admissible when relevant to show intent. (Evid. Code, § 1101, subd. (b); *People* v. *Tassell* (1984) 36 Cal.3d 77, 88, fn. 6 [201 Cal.Rptr. 567, 679 P.2d 1]; *People* v. *Enos* (1973) 34 Cal.App.3d 25, 35 [109 Cal.Rptr. 876]; *People* v. *Nible* (1988) 200 Cal.App.3d 838, 848-849[246 Cal.Rptr. 119]; *People* v. *Garcia* (1981) 115 Cal.App.3d 85, 107 [171 Cal.Rptr. 169].)

Appellant's defense squarely raised the issue of his intent at the time of entry. The circumstances of the prior burglary could properly be considered if they tended logically, naturally and by reasonable inference to overcome appellant's defense. (*People* v. *Durham* (1969) 70 Cal.2d 171, 186 [74 Cal.Rptr. 262, 449 P.2d 198]; *People* v. *Schader* (1969) 71 Cal.2d 761, 775-776, fn. 13 [80 Cal.Rptr. 1, 457 P.2d 841].)

■ Admissibility of other crimes evidence is said to depend upon (1) the materiality of the fact sought to be proved; (2) the tendency of the evidence logically to prove or disprove the material fact; and (3) extrinsic rules or policies requiring exclusion of relevant evidence. (*People* v. *Thompson* (1980) 27 Cal.3d 303, 315 [165 Cal.Rptr. 289, 611 P.2d 883].) ■ Here, no extrinsic policy requires exclusion, because Evidence Code section 1101, subdivision (b) permits the evidence for the purpose of showing intent; intent was material both to the People's case and appellant's defense; and,

we hold, the evidence of the prior burglary tended logically by reasonable inference to disprove appellant's defense.

Appellant's defense was that he knew the victim, that he entered her house knowing she was not home but intending only to wait to talk to her, and that he was intoxicated on alcohol and drugs. The fact that appellant committed a previous burglary under the same circumstances and with the same excuse tends logically, naturally and by reasonable inference to show that appellant was lying (*People* v. *Benson* (1982) 130 Cal.App.3d 1000, 1006 [180 Cal.Rptr. 921]) and that appellant actually entered the house with intent to steal. (*People* v. *Enos, supra,* 34 Cal.App.3d at p. 35; *People* v. *Nible, supra,* 200 Cal.App.3d at pp. 848-849.) In *People* v. *Nible, supra,* the defendant was convicted of burglary after he attempted to enter a house through a window screen at 1:30 a.m. He presented evidence that he was highly intoxicated at the time. The trial court admitted evidence that on two prior occasions the defendant had entered bedrooms of women through a window screen in the middle of the night with intent to commit a sex offense. The appellate court held these prior burglaries were properly admitted because they tended by logical inference to show that the defendant's intent at the time of the charged entry was to commit a felonious sexual crime. (200 Cal.App.3d at pp. 849-850.)

Seizing upon the trial court's mention of "M.O.," appellant next contends modus operandi evidence is ordinarily admissible to prove identity, which was not in issue here (e.g., *People* v. *Sam* (1969) 71 Cal.2d 194, 204-205 [77 Cal.Rptr. 804, 454 P.2d 700]); he further contends the two burglaries in this case did not bear sufficiently unique common marks to be admissible for such purpose. (E.g., *People* v. *Alcala* (1984) 36 Cal.3d 604, 632 [205 Cal.Rptr. 775, 685 P.2d 1126].) This contention is misconceived, as shown by *People* v. *Nible, supra,* 200 Cal.App.3d at pages 848-850, where the same contention was rejected. The *Nible* court explained: "Defendant next argues the other crimes evidence was inadmissible because the threshold test that there be 'striking similarities' between the other crimes and the instant offense was not met. However, the striking similarities, or 'common marks,' threshold test has generally been applied in cases where the material fact is the perpetrator's identity, rather than his intent. Indeed, in such cases the other crimes evidence will be relevant to identity only if the other crime is sufficiently distinctive and similar in its distinctiveness to the charged crime, or if the crimes share a large number of less distinctive common marks, that a proper inference may be drawn the same person committed both crimes. [¶] *However, when the other crime evidence is admitted solely for its relevance to the defendant's intent, a distinctive similarity between the two crimes is often unnecessary for the other crime to be relevant.* Rather, if the other crime sheds great light on the defendant's intent at the time he committed

that offense *it may lead to a logical inference of his intent at the time he committed the charged offense if the circumstances of the two crimes are substantially similar even though not distinctive. . . .*

".     .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

". . . In the prior crimes, defendant entered the open bedroom windows of women at night after removing their window screens . . . . Neither crime is so distinctive that it gives rise to the inference defendant was the same person who [committed the charged offense]. However, both prior offenses give rise to a strong inference defendant intended to rape the victims or to commit some other felonious sexual crime. In the instant case, defendant was caught in the midst of the same preparatory acts used during the commission of the earlier offenses. *Although the circumstances were not distinctive, they nevertheless shared substantially similar characteristics to warrant the inference defendant's intent was the same on each of the three occasions. The prior offenses are therefore substantially relevant to the material fact of defendant's intent at the time of the commission of the instant offense.*" [Italics added; citations and original italics omitted.]

Likewise here, identity was not the issue; it does not matter whether the two burglaries shared such distinctive common marks as to warrant an inference that the same person committed both. They were sufficiently similar to warrant a reasonable inference disproving appellant's defense of innocent intent. The circumstances of the prior were properly utilized for that purpose.

## II

### DEGREE OF NEW BURGLARY

■ Appellant contends that in finding appellant guilty of the charged offense, the trial court never expressly declared that it was first degree burglary, therefore it must be deemed second degree as a matter of law, (Pen. Code, § 1157.) This contention lacks merit in light of the trial court's statement, "[T]he elements are all there for the *residential burglary.* I will find him guilty . . . ." (Italics added.)

Because "[e]very burglary of an inhabited dwelling house . . . is burglary of the first degree" (Pen. Code, § 460), it is now well established that a recital by the court or a jury verdict that the defendant is guilty of residential burglary constitutes a finding of first degree burglary. (*People* v. *Atkins* (1989) 210 Cal.App.3d 47, 51-53[258 Cal.Rptr. 113]; *People* v. *Goodwin* (1988) 202 Cal.App.3d 940, 945-948 [249 Cal.Rptr. 430]; *People* v. *Deay*

(1987) 194 Cal.App.3d 280, 285-286 [239 Cal.Rptr. 406]; *People* v. *Anaya* (1986) 179 Cal.App.3d 828, 831-832 [225 Cal.Rptr. 51]; contra, *In re Jacob M.* (1987) 195 Cal.App.3d 58, 62-63 [240 Cal.Rptr. 418].)

Citing *People* v. *Beamon* (1973) 8 Cal.3d 625, 629, fn. 2 [105 Cal.Rptr. 681, 504 P.2d 905] and *People* v. *McDonald* (1984) 37 Cal.3d 351, 382 [208 Cal.Rptr. 236, 690 P.2d 709, 46 A.L.R.4th 1011], appellant vainly attempts to construe the trial court's remarks as a "collateral" finding not intended to fix the degree. He contends the trial court was merely explaining why it rejected defense counsel's argument for conviction of theft rather than burglary. This argument is wholly unpersuasive. The court was explaining why it found appellant guilty of residential burglary, with which appellant was specifically charged in the information.

## III

### "PRIOR" CONVICTION (PEN. CODE, § 667, SUBD. (A))

Appellant's prior burglary was alleged as a prior conviction pursuant to Penal Code section 667, subdivision (a), which provides in pertinent part, "[A]ny person convicted of a serious felony who *previously has been convicted* of a serious felony in this state . . . shall receive, in addition to the sentence imposed by the court for the present offense, a five-year enhancement for each such *prior conviction on charges brought and tried separately.*" (Italics added.) ■ Appellant contends that his prior conviction of burglary does not qualify because appellant was on probation for it at the time he committed the new offense. In the prior case appellant pleaded guilty in municipal court; the superior court suspended proceedings and placed appellant on probation. Appellant contends he should be deemed not convicted in the prior case until the trial court in this case revoked his probation and sentenced him to a term in state prison to be served concurrently with appellant's sentence for the new offense.

As appellant recognizes, this issue was squarely resolved against appellant's argument in *People* v. *Johnson* (1989) 210 Cal.App.3d 316, 323-325 [258 Cal.Rptr. 347], where the court held that for purposes of Penal Code section 667, subdivision (a) a defendant has been convicted at the time of the adjudication of guilt, even if judgment has not yet been pronounced or become final. In *People* v. *Rhoads* (1990) 221 Cal.App.3d 56, 61 [270 Cal. Rptr 266], the court followed *Johnson* and applied it to a guilty plea.

Appellant argues *Johnson* was wrongly decided. Appellant points out that in certain other contexts, involving civil disabilities flowing from conviction, the courts held the disability did not become effective upon the

finding of guilt but only upon the pronouncement or finality of judgment. (*Stephens* v. *Toomey* (1959) 51 Cal.2d 864 [338 P.2d 182] [right to vote]; *Helena Rubenstein, Internat.* v. *Younger* (1977) 71 Cal.App.3d 406, 421 [139 Cal.Rptr. 473] [forfeiture of public office]; *In re Sonia G.* (1984) 158 Cal.App.3d 18, 23 [204 Cal.Rptr. 498] [permanent termination of parental rights].) He also contends these cases show the meaning of the word "conviction" is ambiguous and that an ambiguous penal statute should be construed favorably to the defendant.

There is no merit to these contentions. The rule of construction of ambiguous penal laws will not be applied to contravene a manifest legislative purpose. (*People* v. *Banks* (1959) 53 Cal.2d 370, 391 [1 Cal.Rptr. 669, 348 P.2d 102].) This case does not involve a civil disability but rather a subsequent criminal proceeding. *Johnson* is squarely in point and we find it to be a proper interpretation of Penal Code section 667. The purpose of section 667 is to deter repetition of criminal conduct. (*People* v. *Rhoads, supra,* 221 Cal.App.3d at p. 60.) The manifest legislative purpose of deterring recidivism by increasing the punishment for habitual criminals upon their conviction of a new offense can be effectuated only by following the *Johnson* rule.

## IV

### Degree of Prior Burglary

On the same day the trial court sentenced appellant for the new offense, it revoked appellant's probation on the prior burglary and sentenced appellant to a midterm of four years on the prior, to be served concurrently with appellant's sentence on the new offense. Six days later, however, the court entered a nunc pro tunc correction of its order on the prior. The nunc pro tunc order provides, "It appearing to the court that through inadvertence and clerical error the minute order of February 15, 1989 in the above-entitled action does not properly reflect the court's order, said minute order is hereby ordered corrected nunc pro tunc as of February 15, 1989 as follows: [¶] By adding at line 114: *offense is determined to be of second degree.*" (Italics added.) The record is not explicit as to the reason for this order; nevertheless, in its nunc pro tunc order the trial court expressly fixed the degree at second. Whether this occurred by operation of law (Pen. Code, § 1157) or in the exercise of the trial court's statutory power to reduce the degree (Pen. Code, § 1181, subd. 6), the court's order must be recognized.

■ Appellant contends that although the court reduced the degree of the prior to second degree, the court neglected to modify the sentence on the prior. The abstract of judgment on the prior still reflects a midterm of

four years on the prior. Appellant correctly contends that four years is not an authorized sentence for second degree burglary. Although four years is a midterm for first degree burglary (Pen. Code, § 461, subd. 1), second degree burglary has a midterm of two years and an upper term of three years. (Pen. Code, §§ 18, 461, subd. 2.) Appellant contends the abstract of judgment as to the prior should be modified to reflect a midterm of two years. We conclude appellant is correct. We shall modify the judgment accordingly.[2]

■ It should be noted that fixing the degree of the prior offense at second for purposes of sentencing on that case does not affect the validity of its use as a prior serious felony under Penal Code section 667, subdivision (a) to enhance the sentence for appellant's subsequent offense. The prior's characterization as a "serious felony" depends not upon its degree but upon whether the record shows it was a residential burglary. (Pen. Code, § 667, subd. (d) [incorporating the definition of "serious felony" in Penal Code section 1192.7, subd. (c)]; Pen. Code, § 1192.7, subd. (c)(18) ["burglary of an inhabited dwelling house]"; *People* v. *Guerrero* (1988) 44 Cal.3d 343, 355 [243 Cal.Rptr. 688, 748 P.2d 1150] [court may look to the entire record to determine the facts of the offense actually committed in the prior conviction].) A burglary may be shown factually to have been residential even though it was second degree for other purposes. (E.g., *People* v. *Burton* (1989) 48 Cal.3d 843, 863 [258 Cal.Rptr. 184, 771 P.2d 1270]; *People* v. *Harrell* (1989) 207 Cal.App.3d 1439, 1444 [255 Cal.Rptr. 750].) The record here shows that appellant's prior burglary was of an inhabited dwelling house.

## V

### Custody and Conduct Credits*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

## VI

The judgment in No. A815638 is modified to provide that appellant is sentenced to a midterm of 2 years in state prison for second degree burglary, to run concurrently with the sentence in No. A821599, and to provide that appellant is entitled to a total of 560 days credit for time spent in custody including 435 days of actual time and 125 days of conduct credit. The judgment in No. A821599 is modified to provide that appellant is entitled to a total of 315 days credit for time spent in custody including 210 days of

[2]Since the sentence is concurrent with appellant's seven-year sentence for the new offense this modification will not practically affect appellant's time in prison.

*See footnote, *ante*, page 1210.

actual time and 105 days of conduct credit. As so modified the judgments are affirmed.

Boren, J., and Lucas, J.,* concurred.

Appellant's petition for review by the Supreme Court was denied May 16, 1991. Mosk, J., and Kennard, J., were of the opinion that the petition should be granted.

---

* Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.