Filed 7/7/15  P. v. Hudson CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>TREVIS HUDSON,<br><br>Defendant and Appellant. | B257539<br><br>(Los Angeles County<br>Super. Ct. No. TA128817) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Kelvin D. Filer, Judge.  Affirmed.

Sharon M. Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Scott A. Taryle and Kimberly J. Baker-Guillemet, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Defendant Trevis Hudson appeals from the judgment of conviction for burglary. He contends that the evidence was insufficient to establish the intent element of burglary, in that he did not intend to assault the victim with a deadly weapon when he entered her apartment. We conclude the evidence is sufficient and affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Defendant began dating C.H. while they were both working for Delta Airlines. During their relationship, defendant helped C.H. find and pay for an apartment. Defendant also purchased two televisions for C.H. to put in this apartment. On the morning of June 20, 2013, C.H. had a phone conversation with defendant in which she told him she "needed space." Defendant asked her to return the TVs, but C.H. refused because she believed they were a gift.

Defendant continued to send C.H. text messages throughout the day, in which he told her he would come to her apartment later that day. C.H. grew uneasy due to the text messages and an incident that day at work where she saw defendant near her work area after she told him to stay away. C.H. alerted her supervisors to the situation, and one of the supervisors followed her home.

That evening, defendant came to C.H.'s apartment with two sheriff's deputies, intending to retrieve the TVs. C.H. told the deputies that she did not have any property belonging to defendant, and the deputies told defendant he would have to go through civil court to obtain the TVs. Defendant continued to text C.H. that night. Defendant sent a text saying, "I have nothing else to lose. Smart move." C.H. felt that defendant was threatening her with "more consequences." She asked, "Is that a threat?" Defendant did not respond.

Around 11:45 p.m., defendant returned to C.H.'s apartment building, grabbed a hammer from the backseat of his car, and climbed up to C.H.'s balcony. He used the hammer to break the lock on her window and kicked through the glass. Once inside the apartment, defendant went into C.H.'s bedroom, where C.H. was talking on the phone to

2

her ex-boyfriend. Defendant swung the hammer at C.H., but she blocked it from hitting her and knocked the hammer out of his hand.

Defendant then dragged C.H. from her bed, punched her in the face several times, and strangled her until she passed out. When C.H. regained consciousness, defendant again assaulted her, this time with a knife from her kitchen. C.H. blocked the knife, and after a struggle defendant dropped the knife. Defendant then forcefully inserted his fingers into C.H.'s vagina. When C.H. screamed, defendant told her to shut up and again strangled her until she passed out.

When C.H. regained consciousness again, she ran toward the front door, where defendant grabbed her. C.H. attempted to break free, and defendant slammed her down into the broken glass by the balcony, where he strangled her for a third time until she passed out. When C.H. regained consciousness, she escaped her apartment by climbing over her balcony onto a neighboring apartment's balcony. Defendant's entire attack took about 10 minutes.

Defendant was charged with first degree burglary (Pen. Code, § 459), two counts of assault with a deadly weapon (§ 245, subd. (a)(1)), assault to commit rape during the commission of a first degree burglary (§ 220, subd. (b)), and forcible sexual penetration by a foreign object (§ 289, subd. (a)(1)(A)). It was further alleged that forcible sexual penetration by a foreign object was committed during the commission of burglary. Defendant pleaded not guilty to all charges.

At trial, defendant denied wanting to physically assault C.H. when he entered her apartment. He admitted that he "got really mad" and felt "taken advantage of." He stated that seeing his boss at the apartment with C.H. when he went to retrieve the TVs upset him because he felt like he would not be able to return to work. He also claimed that once he climbed up to her balcony, he heard C.H. talking on the phone to her ex-boyfriend, which "got me to have the overdrive to do what I did." He admitted that when he entered C.H.'s apartment, it was not about the TVs anymore. He also admitted that he went in the apartment to hurt C.H. When asked what he meant by "hurt," defendant said, "As far as you go through all these emotions that I felt, so I wanted to physically, just,

3

uh." However, he then stated that physically assaulting C.H. was "the furthest thing from my mind" when he entered the apartment. Defendant denied assaulting C.H. with the hammer or knife, saying that he threw both aside willingly.

Defendant was convicted of first degree burglary, both counts of assault with a deadly weapon, and forcible sexual penetration by a foreign object, but found not guilty of assault to commit rape during the commission of a burglary.[1] The jury also found the allegation true that forcible sexual penetration took place during the commission of a burglary. Defendant was sentenced to 17 years, 4 months in prison. Defendant filed a timely notice of appeal.

## DISCUSSION

On appeal, defendant contends the evidence was insufficient to support the jury's finding that he entered C.H.'s apartment with the intent to assault her with a deadly weapon. As a result, he contends the burglary count and the finding that the sexual penetration was committed during the commission of a burglary cannot stand. We disagree.

A. *Standard of Review*

When there is a challenge to evidentiary support of a conviction, we must review the whole record in the light most favorable to the judgment to determine whether substantial evidence existed for a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.) While we must " 'ensure the evidence is reasonable, credible, and of solid value,' " we must give deference to the trier of fact's conclusions about the truth of facts and the credibility of witnesses. (*Ibid.*)

---

[1] The prosecution alleged that defendant assaulted C.H. with the knife in an attempt to rape her; however, C.H. could not testify to what happened after defendant sexually assaulted her with his fingers because she passed out from strangulation.

4

B.    *Burglary*

First degree residential burglary is established when a defendant unlawfully enters into a dwelling with the intent to commit a felony.  The defendant must intend to commit a felony at the time of entry.[2]  (*In re Matthew A.* (2008) 165 Cal.App.4th 537, 540.)

Intention of the defendant is a question of fact, which may be resolved by looking at the conduct of the accused and the circumstances of a particular case.  (*People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1574.)  If circumstances and conduct reasonably indicate his intent was to commit a felony, a verdict of guilty will not be overturned. (*Ibid.*)

In *People v. Clifton* (1957) 148 Cal.App.2d 276 (*Clifton*), Division Two of this District concluded that the defendant's conduct before and after entering the victim's apartment was enough to establish intent to commit assault.  The defendant visited the victim's apartment and asked to talk to her.  (*Id.* at p. 277.)  After she refused to open the door, the defendant asked, "Are you going to open the door or do you want me to knock it down and come in and get you?"  (*Ibid.*)  The victim escaped through another door before the defendant broke in; once inside, the defendant vandalized the apartment.  (*Id.* at pp. 277-278.)  The defendant was seen carrying a tire iron as he left the apartment.  (*Id.* at p. 278.)  These facts were sufficient for burglary.

Similarly to the defendant in *Clifton*, defendant made a threatening comment to C.H. before climbing onto the balcony and breaking into her apartment when he texted her that he had nothing to lose.  When C.H. asked defendant if he was threatening her, she did not hear from him again until he broke into her home and assaulted her with a

---

[2]    The jury was instructed that entry occurs when the defendant "penetrates the area inside the building's outer boundary," and that "[a]n attached balcony designed to be entered only from [the] inside of a private, residential apartment on the second . . . floor of a building is inside a building's outer boundary."  Under these instructions, the jury likely concluded that defendant's unlawful entry occurred when he entered the balcony, not when he further entered the interior of C.H.'s apartment.  On appeal, defendant makes no argument that his intent upon entering the balcony was any different from his intent upon entering the apartment.

5

hammer. By defendant's own admission at trial, he went into the apartment wanting to hurt C.H. in some way. Defendant's intent to assault C.H. is even clearer than the defendant's in *Clifton*, because defendant entered the apartment with the hammer he then used to assault C.H. In *Clifton*, an inference had to be made that the defendant had intended to use the tire iron he held as a weapon even though he did not confront the victim face to face.

The fact that defendant actually did commit assault with a deadly weapon upon entering C.H.'s apartment is also evidence from which intent may be reasonably inferred. (*People v. Jones* (1962) 211 Cal.App.2d 63, 71-72.) Defendant's conduct before entering and his subsequent commission of assault constitute sufficient evidence for the trier of fact to reasonably infer that defendant entered C.H.'s apartment with intent to commit assault with a deadly weapon.

Defendant argues that his intent is not ascertainable from circumstances surrounding his entry into C.H.'s apartment. However, a trier of fact could reasonably decide otherwise given the evidence presented at trial. He also argues that the fact that he had not previously attempted to assault C.H. or any other woman supports the conclusion that he lacked intent to assault in this case. While defendant correctly asserts that a jury may use evidence of past crimes to infer intent to commit the same crime (Evid. Code, § 1101, subd. (b); *People v. Wilson* (1991) 227 Cal.App.3d 1210, 1216), a lack of past crimes does not undermine the conclusion that defendant had the required intent here. The prosecution presented testimony from the victim, testimony from expert witnesses, and several photographs corroborating the victim's account. The only evidence contradicting the conclusion that defendant had intent to commit assault as he entered C.H.'s apartment is defendant's own testimony about his thought process before he entered the building. Even this testimony does not provide a clear counter-narrative as to what defendant's intent actually was if not to assault C.H. He admitted that when he entered C.H.'s apartment, it was not about the TVs anymore and that he went in the apartment to hurt C.H. In any event, the jury was free to disbelieve the totality of his testimony.

6

## DISPOSITION

The judgment is affirmed.


RUBIN, J.

WE CONCUR:


BIGELOW, P. J.


FLIER, J.