[Crim. No. 611.    Fifth Dist.    June 17, 1969.]

THE  PEOPLE,  Plaintiff  and  Respondent,  v.  BILL
HOLLIMAN, Defendant and Appellant.

Peter J. Capriola for Defendant and Appellant.

Thomas C. Lynch, Attorney General, and Stephen Cooper, Deputy Attorney General, for Plaintiff and Respondent.

STONE, J.—Defendant was convicted by a jury of a forcible rape which occurred December 20, 1967, and of another forcible rape and robbery occurring December 21, 1967. The sole ground for his appeal is that evidence of an attempted but uncompleted rape December 28, 1967, was introduced in evidence although he was not charged with the crime.

About 6:45 p.m. December 20, 1967, Mrs. Domoto, alone in the laundry room of the apartment house in which she lived, looked up from her work and saw defendant, carrying a long barreled gun in his hand, walk in. He turned off the light, placed one hand over her mouth, held the gun at her throat and warned, "Don't scream or I'll kill you." He asked if her husband was at home and when she told him he was not but would be home soon, defendant ordered her to take off her clothes and lie on the floor. She complied and he forcibly

raped her, then left. She identified a long barreled, black plastic toy gun, subsequently found in defendant's automobile by police officers, as the "gun" defendant held at her throat. Out of a six-man lineup she first selected two men, number 1 and number 2, the latter being defendant. Both men apparently closely resembled each other, and it was not until she heard the men in the lineup speak that Mrs. Domoto was able to determine defendant was her assailant.

On December 21, Mrs. Catherine Phillips was doing her laundry in the laundry room of the apartment building in which she resided. She went into her apartment, located in front of the laundry room, and commenced cleaning the bathroom. She heard a noise in the laundry room, checked and found a bottle of bleach had fallen from the top of the washer to the floor and the door which she had left open was closed. Seeing nothing else of a suspicious nature, she returned to her apartment and resumed cleaning the bathroom. She heard someone turn out a light in the front room; she picked up her 18-month old daughter and entered the front room. Defendant had turned off one table lamp and was bending over the remaining lighted lamp. Mrs. Phillips yelled; defendant stared at her for a few seconds, then turned off the light and rushed to her, grabbed her arm and told her to be quiet or he would kill the baby. The child cried and defendant told her to quiet the baby or he would kill both of them. He placed an object, which she believed to be a gun, at her throat and made her lie on the bed, where he forcibly raped her. He then robbed her of $26 after commanding her to open her purse and hand him the money. During the course of the robbery she saw the gun, which she described as dark or black, with a long barrel. She selected defendant from a six-man lineup and made a positive courtroom identification of him.

The third episode which was admitted in evidence, although defendant was not charged with the crime, occurred approximately a week after the crimes for which he was convicted. Because the two women were raped in their homes, the police staked out that general residential area. On December 28, at 9:35 p.m., Officer Wimer saw a car being driven west on East Nevada Street at a slow speed, and kept it under observation. The car turned left onto Roosevelt Avenue and came to a stop on the wrong side of the street, remained a short time, then moved slowly under some trees and parked in an area off the roadway. A few minutes later Officer Wimer saw defendant walk north on Roosevelt and turn east on East Nevada, where

he lost sight of him. Wimer radioed for assistance and was joined by Sergeant Echols and Officer Oliver.

Defendant arrived at an apartment building located on North Fulton Street, about five and a half blocks from his car and approximately five blocks from the Phillips apartment, where Mrs. Joyce Sullivan, a tenant, was in the laundry room. About 9:45 p.m. she heard a noise, looked up and saw a young Negro with a black gun pointed at her temple. He threw a laundry bag over her face and turned out the light. She begged him to leave and each time he told her to be quiet. He asked if she was alone, and when she told him her son was in the apartment he left without further molesting her. Mrs. Sullivan estimated he was in her laundry room about 10 minutes. She immediately reported the occurrence to the police. At a police lineup December 29, she picked out two men, the first and second in the line, either of whom she said could have been the man she saw in her laundry room. Defendant was the second man in the lineup. The men in the lineup were not requested to speak for voice identification, but Mrs. Sullivan testified that defendant looked similar to the man who appeared in the laundry room, in size, and build; she did not make a positive identification.

The officers maintained a stake-out at defendant's parked car. At 10:02 p.m. a report of a possible rape at the Sullivan apartment was radioed to them. Wimer and Oliver left to respond to the call, while Sergeant Echols remained on watch. Defendant returned to his parked car and drove southerly, without lights. Sergeant Echols drove after him with the police red light on and the siren sounding, and stopped defendant. A black, plastic toy gun was found in his car.

Defendant makes no contention that evidence of other crimes is not admissible when it is relevant to prove intent, motive or *modus operandi*. Indeed, he could hardly make such an argument in view of the many recent cases articulating the basic rule enunciated in *People* v. *Peete,* 28 Cal.2d 306 [169 P.2d 924], that such evidence is admissible for that purpose. (See *People* v. *Haston,* 69 Cal.2d 233 [70 Cal.Rptr. 419, 444 P.2d 91]; *People* v. *Cramer,* 67 Cal.2d 126 [60 Cal.Rptr. 230, 429 P.2d 582]; *People* v. *Kelley,* 66 Cal.2d 232 [57 Cal.Rptr. 363, 424 P.2d 947].) His primary contention is that a crime committed after those with which he has been charged should not be admissible because, having occurred after the commission of the charged offenses, they could not relate back to prove intent or motive in prior crimes. ■ However, an

offense subsequent to the crimes charged is admissible to prove *common plan, scheme* or *design.* (See Witkin, Cal. Evidence (1958) § 343, p. 302.) The test, as stated in *People* v. *Cramer, supra,* 67 Cal.2d at page 130, is whether "the other offenses offered to prove pattern, scheme or plan are sufficiently similar and possess a sufficiently high degree of common features with the act charged where they warrant the inference that if the defendant committed the other acts he committed the act charged."

In applying the foregoing test to the facts of the case at bench, we find no question as to the propriety of permitting the People to prove the third crime committed by defendant even though it followed commission of the crimes with which he was charged. To begin with, all of the crimes were committed within a period of nine days and in an area of less than six blocks from where defendant parked his car. Each attack took place in the same kind of building, an apartment house, and in each instance defendant entered the laundry room where he would most likely find women alone, isolated from other members of the family. The perpetrator of each crime was a young male Negro armed with a black gun, who promptly upon entering the premises switched off the lights. Although the gun found in his car at the time of his arrest was a toy gun, it fitted the description given by each of the three victims who believed it to be real. In short, the *modus operandi* was almost identical in each case.

Defendant objects, however, that he was not sufficiently identified as the perpetrator of the third, uncharged offense to justify its admission in evidence against him. It is true the linking evidence is circumstantial to the extent that the victim of the uncharged offense was not positive in her identification of defendant. Mrs. Sullivan picked him and another Negro out of the lineup and said it could be either one, and in the courtroom she said defendant appeared to be very similar in build and general appearance to the young colored man who accosted her in the laundry room. But, when this tentative identification was linked with the circumstantial evidence which placed defendant in the area of the crime, we think there was sufficient proof to justify its introduction in evidence. At 9:35 p.m. the officer on a stakeout in the area because of prior rapes, saw defendant's car proceed onto Roosevelt Avenue near the Sullivan apartment, where it came to a stop on the wrong side of the street, then moved slowly under some trees and parked off the road. A few minutes later

Officer Wimer saw defendant walk north on Roosevelt Avenue and turn east on East Nevada. Ten minutes later, at 9:45, Mrs. Sullivan was accosted in the laundry room of her apartment house, five and a half blocks from the place where defendant parked his automobile, which was approximately three blocks from the scene of the first rape and five blocks from the scene of the second rape. The Negro who accosted Mrs. Sullivan used a gun which she described as being similar to the gun the police found in defendant's car. These circumstances, plus the fact that defendant, upon returning to his parked car, drove southward with the lights off for some distance, all point strongly to defendant as the perpetrator of the act.

█ As has been stated many times, and as the jury was properly instructed in this case: ''It is not necessary that facts be proved by direct evidence. They may be proved also by circumstantial evidence or by a combination of direct evidence and circumstantial evidence. There is no distinction between direct evidence and circumstantial evidence as a means of proof. Neither is entitled to any greater weight than the other.'' (CALJIC No. 24 (1967 Revision).)

In *People* v. *Wade,* 53 Cal.2d 322, at page 330 [1 Cal.Rptr. 683, 348 P.2d 116], the Supreme Court held that evidence of a crime other than that with which the defendant was charged was admissible although the evidence linking the defendant with the crime was largely circumstantial. The court found that evidence of such offense was properly admitted in evidence to prove the defendant's connection with the criminal act for which he was on trial.

█ We gather from defendant's argument he believes that evidence of the other crime, to be admissible, must prove such crime beyond a reasonable doubt. This does not appear to be the rule, as we learn from Fricke and Alarcon, California Criminal Evidence (6th ed.) Degree of Proof of Other Offense, page 293: ''While it is essential to a conviction that the guilt of the defendant of the offense for which he is on trial be established beyond a reasonable doubt this rule does not apply to proof of an offense other than that charged. Where evidence of another offense is admissible it is not necessary that such other offense, or any of the elements of such other offense, be proved beyond a reasonable doubt (*People* v. *Lisenba,* 94 Cal.App.2d 403, 429 [94 P.2d 569]; *People* v. *Gray,* 52 Cal.App.2d 620 [127 P.2d 72]; *People* v. *Albertson,* 23 Cal.2d 550 [145 P.2d 7]), and prima facie proof thereof is

all that is required. The uncorroborated testimony of an accomplice is sufficient to prove other offenses which show common scheme, system or design (*People* v. *Rosoto,* 58 Cal.2d 304 [23 Cal.Rptr. 779, 373 P.2d 867] )."

The judgment is affirmed.

Conley, P. J., and Gargano, J., concurred.