[Crim. No. 20031. First Dist., Div. One. Jan. 30, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
GREGORY JOHN DeRANGO, Defendant and Appellant.

584

COUNSEL

Richard A. Zitrin, under appointment by the Court of Appeal, Elizabeth A. Zitrin and Mayer, Zitrin & Zitrin for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Ronald E. Niver, Robert R. Granucci and Michael I. Mintz, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

ELKINGTON, Acting P. J.—Defendant DeRango's appeal is from the superior court's "judgment, verdict and sentence . . . denying probation . . . ." We treat it, as obviously intended, as an appeal from an order of commitment to the California Youth Authority.

The appeal's critical issue concerns the validity of the superior court's ruling permitting evidence of an uncharged earlier burglary against DeRango, upon his trial for burglary by use of an acetylene torch in violation of Penal Code section 464.

At the trial, from evidence adduced and reasonable inferences derivable therefrom, the jury could reasonably, and presumably did, find the

following to be true. (See *People* v. *Green* (1980) 27 Cal.3d 1, 55 [164 Cal.Rptr. 1, 609 P.2d 468]; *Green Trees Enterprises, Inc.* v. *Palm Springs Alpine Estates, Inc.* (1967) 66 Cal.2d 782, 784-785 [59 Cal.Rptr. 141, 427 P.2d 805].)

DeRango had been employed by Marin Car Wash/gas station for about one and a half years. The business premises contained a safe with two separate compartments, one above the other. The floor of the upper compartment was furnished with a slot through which money and credit card slips might be passed into the lower compartment where the greater part of the cash receipts was ordinarily kept. Each of the safe's two doors had a separate and independent four-digit combination lock. About 7, including DeRango, of the 25 to 30 employees of the business had access to, and had been given the combination of, the upper compartment. When the combination was occasionally changed it was "given out" to the various employees who were entitled to it, including DeRango. Entrance to the safe's lower compartment, and knowledge of its combination, was restricted to the owner and two higher-level employees.

The Marin Car Wash/gas station was kept open for business seven days a week, but its Saturday and Sunday cash receipts, known to many if not all of its employees, were not banked until the following Monday.

DeRango was familiar with the use of acetylene torches for cutting metal. He had studied the technique in high school and had operated such equipment in the course of his employment. On one occasion he had borrowed his employer's "torch," with its "entire assembly," for almost two weeks. Such a torch, as is well known, will be activated by matches.

DeRango had previously worked for "Motorcycles Unlimited, Inc.," a "motorcycle sales, parts and a repair shop" which he continued to frequent "virtually every day."

One evening during the month of January 1978, the business premises of Marin Car Wash/gas station were burglarized. The burglar, operating the combination of the safe's upper compartment had stolen about $300. The safe's lower compartment had not been molested. The building had been entered by someone who had gone in under a "locked" sliding door; "The locking mechanism [had] been made in-

operative because the sliding bars can be moved out of place and the door can be opened."

The combination of the safe's upper compartment was changed May 4, 1978. DeRango "quit" his employment the next day, May 5, 1978. The safe's upper combination was not again changed until June 14, 1978. DeRango kept returning to the business premises after he had quit, at least "twice a day" to visit his "good buddies . . . ." He stated: "I had a lot of friends that worked there that I met over the two years. I would go back and see them and pick them up when they got off work, . . ."

On the evening of Sunday, June 11, 1978, while the safe's upper door's combination remained unchanged, the Marin Car Wash/gas station was again burglarized. Entry had once more been made under the premises' defectively locked sliding door. The safe's upper door was again opened by someone with knowledge of its combination. A large quantity of water had then been poured through the slot to the lower compartment, apparently to retard the burning of its contents. The lower combination was then "cut" out by means of the premises' acetylene torch. Entrance to the safe's lower compartment was thus gained and the weekend's receipts of about $7,000 were stolen.

Upon discovery of the burglary on Monday morning, sheriff's officers called to the scene found a used "Motorcycles Unlimited, Inc." matchbook on the floor near the safe, and DeRango's palmprint was found upon the freshly cleaned, white-painted surface of a cabinet in which the safe was enclosed. The palmprint's location was about 16 inches from the floor.

In the months following the burglary DeRango paid $1,600 down for a $2,800 1972 Toyota and $500 down for a new motorcycle. The money, he testified, was borrowed; the loans themselves were uncorroborated.

During DeRango's trial, the People offered in evidence a purported admission by him that he had committed the earlier, January 1978, burglary. Following a hearing, the trial court ruled that the evidence was admissible and would be allowed. It is that ruling, and the ensuing evidence, upon which the several claims of error on DeRango's appeal are founded.

(It is significant that at no time during the trial did DeRango, who testified on his own behalf, deny that he had made the subject admission.)

The criticized ruling was founded upon Evidence Code section 1101, authorizing admission of such evidence "when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident) other than his disposition to commit such acts."

Evidence Code section 1101 codifies long-existing rules followed by the courts of California.

■■■ "As a general rule evidence of other crimes is inadmissible when offered solely to prove criminal disposition or propensity to commit the crime charged, because the probative value of such evidence is outweighed by its prejudicial effect.... However, evidence which is otherwise relevant 'is not excluded because it reveals the commission of an offense other than that charged'... where 'it tends logically, naturally, and by reasonable inference, to establish any fact material for the People or to overcome any material matter sought to be proved by the defense' ....*It is settled that evidence of other crimes is ordinarily admissible despite the prejudicial effect where it tends to establish guilty knowledge, motive, intent, or presence of a common design or plan.*" (*People* v. *Hill* (1967) 66 Cal.2d 536, 556-557 [58 Cal.Rptr. 340, 426 P.2d 908] [cert. den., 390 U.S. 911 (19 L.Ed.2d 884, 88 S.Ct 838)]; italics added.)

■ "When ... a primary issue of fact is whether the defendant—rather than some other person—committed the charged offense, evidence of uncharged offenses is ordinarily admissible if it discloses a distinctive modus operandi common both to the charged and uncharged offenses.... A modus operandi gives rise to a reasonable inference that the charged and uncharged offenses were committed by the same person when the marks common to those offenses set them apart from other offenses of the same general variety." (*People* v. *Matson* (1974) 13 Cal.3d 35, 40 [117 Cal.Rptr. 664, 528 P.2d 752].)

Thus evidence of an uncharged offense will ordinarily be permitted where it "tends to show ... a peculiar or characteristic behavior pattern ... which is manifest in the conduct of the transgressor in both crimes" (*People* v. *Cavanaugh* (1955) 44 Cal.2d 252, 266 [282 P.2d 53]

[cert. den., 350 U.S. 950 (100 L.Ed. 828, 76 S.Ct. 325)]), or is "an intermixed or blended detail of [a] whole criminal scheme" (*People* v. *Rivers* (1959) 171 Cal.App.2d 335, 341 [340 P.2d 648]), or there is "similarity in significant respects . . . with the crime charged" (*People* v. *Lyon* (1955) 135 Cal.App.2d 558, 578 [288 P.2d 57]), or where "there is some clear connection between that offense and the one charged" (*People* v. *Cramer* (1967) 67 Cal.2d 126, 129-130 [60 Cal.Rptr. 230, 429 P.2d 582]).

■ "Admitting evidence of uncharged offenses . . . lies within the sound discretion of the trial judge, weighing the probative value of such evidence against its prejudicial effect." (*People* v. *Matson, supra,* 13 Cal.3d 35, 40.)

"'[P]rima facie proof [of the uncharged offense] is all that is required.'" (*People* v. *Holliman* (1969) 274 Cal.App.2d 89, 94-95 [78 Cal.Rptr. 826].)

And, as indicated, the trial court's discretion will be exercised in the light of Evidence Code section 352: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

These principles are particularly applicable where both the charged and uncharged offenses were against the same victim, or the same property. The point is illustrated by *People* v. *Beamon* (1973) 8 Cal.3d 625 [105 Cal.Rptr. 681, 504 P.2d 905], where the same victim had been robbed by Beamon on occasions 18 months apart. The victim's testimony in respect of the earlier, and uncharged, robbery was contended on Beamon's appeal to have been erroneously allowed. There had, as in the case now before us, been evidence of common circumstances attending both crimes. The high court ruled the evidence's admission proper for, among others, the following reasons: "It was incumbent on the People to attempt to buttress their proof of felonious intent by evidence of a plan or scheme in common with that on the occasion of the prior high-jacking. . . . [¶] We have dealt with the applicability of the rules enunciated in Evidence Code section 1101 which is a codification of the existing law at the time of its enactment . . . . [¶] *We have no difficulty in concluding that, even ignoring other similarities, the common mark of the identical perpetrator and identical victim in both the charged*

*and uncharged offenses is so distinctive that it adds persuasive support to the inference that defendant and not some other person was the perpetrator of both offenses ....* Testimony received at trial clearly invests the evidence of the charged crimes with probative value sufficient to outweigh any undue prejudice, and was properly received pursuant to Evidence Code section 1101." (8 Cal.3d, pp. 632-633; italics added.)

It is further observed that the use of a common device ("celluloid to spring a spring lock") to gain entry in two otherwise unrelated burglaries was such a similarity as authorized admission of evidence of an earlier uncharged offense. (See *People v. Shapiro* (1960) 180 Cal.App.2d 714, 718, 719 [4 Cal.Rptr. 788].) ▮ Here, as noted, entry to the premises, and safe, on each occasion was, respectively, by knowledgeable manipulation of the outer door's broken locking mechanism, and of the combination of the combination lock.

In the case at bench DeRango was one of a limited number of employees with knowledge of the combination to the upper compartment of his employer's safe. Evidence of his perpetration of the earlier burglary *tended* to establish a common plan to use that knowledge to steal his employer's money. As noted, there were other common characteristics of the two offenses, thus strengthening the inference of such a plan. And DeRango's conceded admission of the earlier burglary against the same employer victim, as in *People v. Beamon*, added greatly to the probability that it was he who had committed the second offense.

The complained of evidence was thus relevant and legally admissible. The criticized ruling was *not* an abuse of "the sound discretion of the trial judge, . . ." (See *People v. Matson, supra*, 13 Cal.3d 35, 40.)

A related contention of DeRango is that "the failure of the trial court to give a correct, clear, understandable instruction on the issue of the prior offense was prejudicial error."

At the time evidence of the uncharged offense was admitted, the trial court instructed the jury on the limited purposes for which it might be considered, in substantial accordance with CALJIC No. 2.50. DeRango complains that the instruction was "a bit unclear" because the court added that the evidence "is offered then at this time and for the limited purpose for which you may consider such evidence, that you may weigh it [*sic*]." We find no substantial lack of clarity; certainly the jury were

not misled. Nor was any complaint of, or objection to, the instruction made by DeRango.

At the trial's close the court again instructed the jury on the subject, commencing with: "Certain evidence was admitted for a limited purpose." We find no merit in the argument that the "jury is not told what evidence."

A related claim of error arises from a portion of a jury instruction stating, "you are again instructed that you must consider such evidence for any purpose except the limited purpose for which it was admitted." DeRango's contention is that omission of the word "not" caused the instruction to be erroneous. But resort to the context, we think, dispels any probability of the jury's misunderstanding: *"Certain evidence was admitted for a limited purpose. At the time that this evidence was admitted, you were admonished that it could not be considered by you for any purpose other than the limited purpose for which it was considered;* and you are again instructed that you must consider such evidence for any purpose except the limited purpose for which it was admitted." (Italics added.) Elsewhere, as noted, the jury were properly instructed on the limited purpose for which the evidence of the uncharged offense was admitted, and, reiterated at least five times, was the admonition that it might be considered *only for that limited purpose.* The jury were patently not misled. And here also it appears that DeRango made no objection to the complained of language.

For these several reasons the order of commitment will be affirmed.

Affirmed.

Newsom, J., and Grodin, J., concurred.

A petition for a rehearing was denied February 27, 1981, and appellant's petition for a hearing by the Supreme Court was denied April 1, 1981.