[No. E009561. Fourth Dist., Div. Two. Nov. 20, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
VINCENT DELGADO, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts 2 through 5.

## Counsel

Terrence Verson Scott, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Robert M. Foster and Warren P. Robinson, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**RAMIREZ, P. J.**—A jury convicted Vincent Delgado of first degree burglary. (Pen. Code, § 459.) In bifurcated proceedings, the trial court found Delgado had suffered three prior felony convictions. (Pen. Code, §§ 667 & 667.5, subd. (b).) He was sentenced to prison and appeals, claiming evidence was erroneously admitted and some was erroneously excluded, the jury was misinstructed, his motion for mistrial should have been granted and sentencing error occurred. We reject his contentions and affirm.

### Facts

Midmorning on June 14, 1990, the next-door neighbor of the male and female victims saw a man enter the victims' house through a side window. A

short time later, Delgado walked down the driveway of the victims' home, carrying a videocassette recorder (VCR) in a pillowcase. The neighbor testified at trial that Delgado appeared to be the same man who had gone through the window earlier. The neighbor's son called the police, and an officer appeared down the street from the burglarized residence as Delgado was walking away from the house. When the officer apprehended Delgado, the latter had jewelry in his pocket. The victims identified the pillowcase, VCR and jewelry as having been taken from their home that day.

ISSUES AND DISCUSSION

1. *Admission of Evidence*

a. *Defendant's Postarrest Silence*

Delgado testified that he was an acquaintance of the female victim's brother and had been to her house three times before the crime to visit the brother. Delgado stated that the brother owed him some money for damage done to Delgado's car, and because the latter had no cash to repay him, on the day of the crime, he gave Delgado the jewelry and VCR in the pillow-case as partial payment after Delgado had entered the house through the unlocked back door pursuant to the brother's invitation.

During cross-examination of Delgado, the prosecutor asked him if he had told the officer who arrested him or any other officer that he had just gotten the items from the female victim's brother. He denied telling any officer at the substation, where he was taken after his arrest, about the origin of the goods. He stated that the first person he told about how he obtained them was his lawyer and he waited two months before telling "anyone" that he was innocent. The only objection defense counsel lodged to any of the prosecutor's questions was that one assumed facts not in evidence and another was vague.

Delgado testified on cross-examination that he did not talk with any officers at the scene of the arrest. On redirect examination, he denied that any police officers had ever asked him any questions.

During argument to the jury, the prosecutor pointed out Delgado's failure to tell the police or anyone about his postarrest version of how he came to possess the items. The prosecutor argued that this suggested that Delgado's story was fabricated.

■ Delgado now claims that the prosecutor's questions and comment about his silence violated *Doyle v. Ohio* (1976) 426 U.S. 610 [49 L.Ed.2d 91,

96 S.Ct. 2240] and California case law condemning such action. We disagree. Because we dispose of this argument on the merits, we need not address the People's assertion that the failure of defense counsel below to object to the questions and commentary waived the issue for appeal.

In *Doyle*, the United States Supreme Court held, "The warnings mandated by . . . [*Miranda*][1] . . . require that a person taken into custody be advised immediately that he has the right to remain silent, that anything that he says may be used against him, and that he has a right to retained or appointed counsel before submitting to interrogation. Silence in the wake of these warnings may be nothing more than the arrestee's exercise of these *Miranda* rights. . . . *Miranda* warnings contain no express assurance that silence will carry no penalty, [however,] such assurance is implicit to any person who receives the warnings. In such circumstances, it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial." (*Doyle* v. *Ohio, supra*, 426 U.S. at pp. 617-618 [49 L.Ed.2d at pp. 97-98].)

In 1982, in *Fletcher* v. *Weir* (1982) 455 U.S. 603, 607 [71 L.Ed.2d 490, 484, 102 S.Ct. 1309], the court made clear that its holding in *Doyle* applied only when *Miranda* warnings had first been given. Therein it stated, "In the absence of the sort of affirmative assurances embodied in the *Miranda* warnings, we do not believe that it violates due process of law for a State to permit cross-examination as to postarrest silence when a defendant chooses to take the stand."

In the years following *Doyle*, the courts of this state created what was denoted the "California rule" (*People* v. *Fondron* (1984) 157 Cal.App.3d 390, 397 [204 Cal.Rptr. 457]; see also *People* v. *Free* (1982) 131 Cal.App.3d 155, 165 [182 Cal.Rptr. 259]) that forbade cross-examination or commentary on a defendant's postarrest silence whether *Miranda* warnings were given or not. Delgado cites cases evoking the "California rule" in support of his argument that *Doyle* error occurred here. However, also in 1982, Proposition 8 declared that the exclusionary rule applies only to matters for which federal law prohibits admission.

Thus, in *People* v. *O'Sullivan* (1990) 217 Cal.App.3d 237, 240 [265 Cal.Rptr. 784], the court held, ". . . [A]fter Proposition 8, evidence of appellant's pre-*Miranda* silence may be excluded only if application of the exclusionary rule is compelled by federal law. Since the admission of evidence of pre-*Miranda* silence to rebut a defense claimed for the first time

---

[1]*Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].

at trial is permitted by federal law (see *Fletcher* v. *Weir* . . . ), appellant's pre-*Miranda* silence was admissible on cross-examination and rebuttal. . . ."

Additionally, in *People* v. *Medina* (1990) 51 Cal.3d 870 [274 Cal.Rptr. 849, 799 P.2d 1282], where the defendant attacked as unconstitutional the application of the adoptive admission rule to his postarrest silence, the California Supreme Court held, ". . . [O]nce *Miranda* . . . warnings have been given, it may be constitutionally improper to introduce evidence of an accused's postarrest silence. (See *Fletcher* v. *Weir* . . . .) The record [here] fails to show that defendant was given *Miranda* warnings prior to his conversation . . . ." (*Id.*, at p. 890.)[2]

It is thus clear that where *Miranda* warnings have not been given, the federal rule, as announced in *Fletcher* v. *Weir*, governs, and *Doyle* error is not committed by questions or commentary concerning a defendant's post-arrest silence.

The record here does not state that Delgado was given his *Miranda* rights. He asserts, however, that we must *assume* that he was, in accordance with the rule mandating the presumption that official duty was carried out. Perhaps if there had been some evidence adduced at trial that Delgado was

---

[2]*Medina* involved a defendant's silence and subsequent statements in response to his sister's questions to him as he sat in jail following his arrest. It thus raises an interesting point noted by Delgado, i.e., does *Doyle* apply if the cross-examiner asks whether the defendant gave his exculpating explanation to *anyone*, and not just to law enforcement. Although *People* v. *Galloway* (1979) 100 Cal.App.3d 551 [160 Cal.Rptr. 914], cited by Delgado, holds that it does, it relies on cases in which the difference was either not addressed or the persons available to hear the defendant's story were prison guards or law enforcement investigators. We believe a far more logical approach to the issue was taken by the court in *People* v. *Eshelman* (1990) 225 Cal.App.3d 1513 [275 Cal.Rptr. 810]. Therein, the court held, "*Doyle* need not apply to defendant's silence invoked [in the presence of] a private party absent a showing that such conduct was an assertion of his rights to silence and counsel. [Citation.] On the other hand, when the evidence demonstrates that defendant's silence in front of a private party results primarily from the conscious exercise of his constitutional rights, then *Doyle* should apply." (*Id.*, at p. 1520.) For example, in *Eshelman*, the defendant testified that one of the reasons he refused to talk was because his attorney had advised him not to. (*Id.*, at p. 1521.)

A few weeks after Eshelman was penned, the Supreme Court, in *Medina* held, ". . . [W]here defendant was engaged in conversation with his own sister, it was not unreasonable to permit the jury to draw an adverse inference from his silence in response to her inquiry as to why he shot the victims. [¶] The record does not suggest that defendant believed his conversation with his sister was being monitored, or that his silence was intended as an invocation of any constitutional right." (*People* v. *Medina, supra,* 51 Cal.3d at p. 890.)

Here, there was no evidence that Delgado's failure to tell *anyone* his version of the story was motivated by his desire to invoke his right to silence. Absent this, there was no *Doyle* error in admitting evidence or permitting comment that he failed to reveal his defense to anyone, meaning persons other than law enforcement officers.

ever questioned by the police, we would be inclined to agree with his position. However, from Delgado's own mouth, upon questioning by his own attorney, came the testimony that no officer had *ever* questioned him. No other evidence at trial contradicted this. A defendant who is never questioned need not be Mirandized, and we have no basis whatsoever to assume that Delgado was given his rights.

### b. *Other Crimes*

During his direct testimony, Delgado admitted that he had suffered three prior felony convictions—one for a theft-related offense in 1979, one for robbery in 1982, and one for unlawfully taking a vehicle in 1989. At the close of Delgado's direct testimony, the prosecutor moved to be permitted to cross-examine Delgado about the facts surrounding the last offense. He proposed to ask Delgado if, when the latter was apprehended in the stolen vehicle, there was inside the car a VCR inside a pillowcase and jewelry. The prosecutor also stated his intention to ask Delgado if he was receiving that property as repayment for a debt and if he had obtained the property by entering a house through the window. The court granted the People's motion.[3]

During questioning by the prosecutor, Delgado said he was not aware there was a VCR in a pillowcase in the trunk of the stolen car in 1989, although he later explained that he had not looked in the trunk of that car. He

---

[3]After the trial court indicated its belief that the questions were proper, defense counsel argued that the two events were not sufficiently similar to permit the inquiry under Evidence Code section 1101, subdivision (b), and the questions were argumentative in nature. He also pointed out that, as to the 1989 crime, the pillowcase had come from a burglary independent of the one that produced the VCR, although both had occurred within 24 hours of Delgado's arrest in the stolen car. The court again stated its belief that the area of inquiry was proper. Defense counsel then asserted that it would be misleading for the prosecutor to imply in his question to Delgado that the VCR and pillowcase came from the same burglarized residence. The court and counsel thereupon engaged in substantial discussion concerning this tangential point. The court expressed doubt that the jury would be interested in knowing about the two-burglaries aspect of the prior offense and reiterated its ruling permitting the questioning.

Because the tangential discussion between the court and counsel immediately preceded the court's final reiteration of its ruling, that statement concerned only the VCR in the pillowcase. However, we are not persuaded that the court was ruling that the mere existence of the VCR in the pillowcase was the only similarity between this offense and the previous one, and only that aspect of the former could be brought out by the prosecutor on cross-examination of Delgado. Indeed, during that questioning, the prosecutor asked Delgado about the jewelry also found in the car, without objection by defense counsel. While the prosecutor failed to question Delgado about the means by which he may have entered the burglarized residence, and whether his possession of the items was repayment for a loan, no objection was voiced by defense counsel when these matters were not pursued, and the fact that they were not does not change the character of the court's ruling, which was based on the prosecutor's representation that he would go into these additional areas.

also denied being aware that there was stolen jewelry in the same car, although he admitted knowing about a television set in the backseat.

■■ Delgado now claims that the court erred in permitting the prosecutor to ask these questions. Evidence Code section 1101, subdivision (b), provides, "Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or whether a defendant in a prosecution for an unlawful sexual act or attempted unlawful sexual act did not reasonably and in good faith believe that the victim consented) other than his or her disposition to commit such an act."

■■ The admissibility of evidence of other crimes depends on the materiality of the fact sought to be proved or disproved, the tendency of the other crime to prove or disprove the material fact and the existence of any rule or policy requiring the exclusion of relevant evidence. (*People* v. *Thompson* (1980) 27 Cal.3d 303, 315 [165 Cal.Rptr. 289, 611 P.2d 883].) ■■ Delgado contends that the second factor is missing here because there were insufficient similarities between the instant offense and the 1989 incident to prove intent, planning or absence of mistake or accident.

First, Delgado asserts that not only must there be a sufficient *number* of common marks between the two, but those marks must be *distinctive*, as is required when other crimes are introduced to show identity of the perpetrator. In support, he cites *People* v. *Guerrero* (1976) 16 Cal.3d 719, 728-729 [129 Cal.Rptr. 166, 548 P.2d 366] and *People* v. *Thompson, supra,* 27 Cal.3d at page 319, footnote 23, and he criticizes a contrary holding in *People* v. *Nible* (1988) 200 Cal.App.3d 838 [246 Cal.Rptr. 119].

It is true that *Guerrero* and *Thompson* hold that the distinctiveness of the common marks is a prerequisite to admission of other crimes to prove facts other than identity, just as it is to show identity. However, more recently, in *People* v. *Robbins* (1988) 45 Cal.3d 867, 880 [248 Cal.Rptr. 172, 755 P.2d 355], the California Supreme Court retreated from the stand taken in *Guerrero* and *Thompson* by noting, "It has been observed that when evidence of an uncharged offense is introduced to prove intent, the prosecution need not show the same quantum of 'similarity' as when uncharged conduct is used to prove identity. ([Citations]; but see [*People* v. ]*Thompson* . . . .)"

The reason for treating evidence of other crimes introduced for the purpose of showing identity differently than when it comes in on other issues

was explained thusly in *People* v. *Nible, supra,* 200 Cal.App.3d 838, ". . . [O]ther crimes evidence will be relevant to identity only if the other crime is sufficiently *distinctive* and similar in its *distinctiveness* to the charged crime, or if the crimes share a large number of less distinctive common marks, that a proper inference may be drawn the same person committed both crimes [(the so called "signature theory")]. [Citations.] [¶] However, when the other crime evidence is admitted solely for its relevance to the defendant's intent, a *distinctive* similarity between the two crimes is often unnecessary for the other crime to be relevant. Rather, if the other crime sheds great light on the defendant's intent at the time he committed that offense it may lead to a logical inference of his intent at the time he committed the charged offense if the circumstances of the two crimes are substantially similar even though not distinctive.

" . . . . . . . . . . . . . . . . . . . . . . . . .

"An example best illustrates the irrelevancy of distinctiveness to the chain of inferential reasoning leading from a prior crime to the defendant's intent during the charged crime. Had defendant [here] used a blow torch to remove the window screens of his prior two victims, and had there been evidence of the use of a blow torch on [the current victim's] window screen, then the *distinctiveness* of defendant's method of entry would be highly probative on the issue of the identity of the person who entered [the current victim]'s apartment. However, where the issue is intent, rather than identity, the evidence of blow torch entry adds little or nothing to the determination of defendant's intent on either occasion." (*People* v. *Nible, supra,* 200 Cal.App.3d at pp. 848-849, italics in original.)

The logic of *Nible* has great appeal. Indeed, it has been embraced by two other Courts of Appeal. (See *People* v. *Wilson* (1991) 227 Cal.App.3d 1210, 1217 [278 Cal.Rptr. 319]; *People* v. *Denis* (1990) 224 Cal.App.3d 563, 568 [273 Cal.Rptr. 724].) Certainly, in light of the Supreme Court's comments in *Robbins,* we cannot agree with Delgado that we are bound by its prior contrary holdings in *Guerrero* and *Thompson* that the marks of similarity must be distinctive when proving facts other than identity.

We, therefore, determine whether the trial court abused its discretion, that is, acted unreasonably (see *People* v. *DeRango* (1981) 115 Cal.App.3d 583, 589-590 [171 Cal.Rptr. 429]) in concluding that the other crime, *as represented by the prosecutor at the time of the hearing,*[4] was sufficiently similar to the instant offense to permit questioning about it. The prosecutor's questions were aimed at determining if, during the other offense, Delgado entered the

---

[4]See footnote 2, *ante.*

burglarized residence through a window, if the items taken were repayment for a debt, if the VCR was in a pillowcase and if stolen jewelry was involved, all as had occurred here. We conclude that these four factors constitute sufficient similarities to justify the questions on the issue of intent. It must also be kept in mind that, unlike most other cases dealing with other-crimes evidence which is not otherwise admissible, Delgado testified himself about the offense during his direct examination, thus somewhat reducing the prejudicial impact of the prosecutor's questions. Added to that is the fact that the prosecutor chose a method of introducing the evidence which had the least possible prejudicial impact on Delgado in that he denied being aware of the existence of the items, and the jury was instructed that counsel's questions could not be considered evidence, therefore, they were not free to assume anything on the basis of the questions alone.

■ Finally, Delgado also objects here to the method the prosecutor chose to introduce evidence about the other crime. He maintains that, ordinarily, the prosecutor brings in witnesses or documents to prove the details of other crimes, rather than asking the defendant about them. None of the cases he cites in his brief, however, holds that the method chosen here constitutes reversible error. Moreover, despite Delgado's assertion to the contrary, he did not object below to the method.[5] Finally, as stated above, this method produced the most favorable result possible for Delgado, given the admissibility of the other crime evidence.[6]

---

[5]Defense counsel's only statements about the method are as follows: "This is a—at least in my experience, a unique way of trying to introduce 1102(b) Evidence. I have never had a situation where the People sought to introduce it by asking questions of the defendant.

"It would appear to me that the questions themselves are a bit argumentative in nature, asking the defendant, well, this other occasion, was the VCR and the pillow case received in the same manner as recompense for some auto accident. I don't think that goes to the nature of the facts in the situation. It is just arguing with the de[fenda]nt and seeking to attack his credibility in a very collateral way in an argumentative manner.

"...............................

"I am concerned about the nature of the examination, also, as I basically indicated because it seems to be argumentative that [the prosecutor] did not state with any degree of specificity what question he intended to ask Mr. Delgado, so I don't think the Court, based on his representation as to what he's going to ask, can allow the question.

"Certainly, I don't think an argumentative question such as the last time when you were caught with a stolen VCR inside a pillow case, did you obtain it in the same manner as this case, that's argumentative because there is no evidence that any such claim was made in the last case."

As is apparent from the foregoing, defense counsel's objection was to the *argumentative nature* of the questions. Although he expressed some *unfamiliarity* with the prosecutor's method, this cannot be construed as an objection.

[6]In a related argument, Delgado contends that there was insufficient evidence of a similar other crime to warrant the giving of CALJIC No. 2.50, the "other crimes" instruction. As the People point out, although a copy of CALJIC No. 2.50 is contained in the clerk's transcript,

2.-5.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The judgment is affirmed.

Hollenhorst, J., and Timlin J., concurred.

Appellant's petition for review by the Supreme Court was denied February 18, 1993. Kennard, J., was of the opinion that the petition should be granted.

---

it carries a notation that it was "withdrawn," a fact which the court noted during discussion with counsel concerning the instructions. The reporter's transcript further shows that the instruction was never orally given to the jury.

*See footnote, *ante*, page 1837.