Filed 3/26/13  P. v. Howell CA2/26

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>KENNETH HOWELL,<br><br>    Defendant and Appellant. | 2d Crim. No. B237884<br>(Super. Ct. No. MA046867)<br>(Los Angeles County) |

Kenneth David Howell appeals from the judgment entered after his conviction by a jury of first degree murder (Pen. Code, §§ 187, subd. (a), 189),[1] two counts of aggravated sexual assault upon a child (§ 269, subds. (a)(4) & (a)(5)), and two counts of lewd act on a child by use of force.  (§ 288. subd. (b)(1).  Appellant admitted that he had served one prior prison term.  (§ 667.5, subd. (b).)  He was sentenced to prison for an indeterminate term of 55 years to life plus a consecutive determinate term of 17 years.

Appellant contends that the prosecutor improperly used his post-arrest silence to impeach him.  He also contends that (1) the trial court erroneously instructed the jury, and (2) defense counsel was ineffective because she failed to object to some instructions and failed to request other instructions.  We affirm.  However, we direct the trial court to correct an omission in the abstract of judgment.

---

[1] All statutory references are to the Penal Code.

1

*Facts*

<u>People's Evidence</u>

In the evening on August 23, 2009, appellant and his wife, T., argued inside their bedroom. H. exited the bedroom and walked into the kitchen to get something to drink. H.'s 15-year-old son, J. P., asked her if she was okay. She replied that she was okay and walked back into the bedroom. Before J.P. went to sleep in the living room, he heard T. yell to him to " 'please help.' " He did not intervene because he was scared of appellant. Appellant "used to beat [him]."

That night, appellant forced T.'s daughter, S, to have sex with him. S was 13 years old, and appellant was not her biological father. **(3RT 942, 944)~** While S. was sleeping in the living room, appellant picked her up and carried her into her mother's bedroom. T. was lying on the bed with a blanket covering her head. She was not moving or making any sounds. Appellant placed S. on the bed next to her mother. Appellant kissed S. on the neck and mouth and touched her breasts. He removed his and S.'s clothing. Appellant placed his mouth on S.'s vaginal area. Appellant then "put [her] legs on his shoulders." S. felt "something go inside [her] vagina." It was painful, and she started to cry. Appellant said that "if [she] didn't stop crying, he was going to duct tape [her] head next." Appellant was on top of S., moving his body back and forth.

J.P. awoke at noon. He tried to open the door to his mother's bedroom, but "there was this chair in the way, which prevented [him] from opening it." Appellant, who was inside the bedroom, asked J.P. what he wanted. J.P. replied that he was looking for S. Appellant said that S. was with him. J.P. went back into the living room.

Appellant eventually exited the bedroom. He had a "big grin on his face" and "pushed [J.P.] out of the way." Appellant went into the garage and drove away.

J.P. entered his mother's bedroom. T. was lying in bed on her stomach "with her hands tied behind her back with duct tape." A plastic bag completely covered her head. The bag was secured with duct tape "from her neck to the top of her head." S. "was at the edge of the bed on her knees, crying."

2

T. was dead. The forensic pathologist who performed an autopsy opined that she had "died as a result of asphyxia, which is the lack of oxygen due to suffocation." The suffocation was caused by the plastic bag over her head.

Defense Evidence

Appellant testified as follows: On August 23, 2009, he and T. got into an argument about buying a car. T. wanted to buy the car, but appellant did not want to buy it. The argument ended, and the couple made up. Appellant took drugs and had sex with T. He "wanted to get high some more," but T. was "complaining and nagging" that he should take a shower and get ready for work. Appellant put his arm around T.'s neck "to put her to sleep." When her body went "limp," he "laid her down [on] the bed." His "intent was just to put her to sleep for a while so [he could] continue and use more drugs." He duct-taped her hands behind her back so that she would be unable "to stop [him] from doing more drugs." Appellant then went into the bathroom, where he smoked and injected methamphetamine. When he exited the bathroom, T. was dead. Appellant put a plastic bag over her head because he could not bear to look at her face. He put some duct tape around the bag to hold it in place.

Appellant denied having sex with S. He testified that she was not inside the bedroom with him.

The defense retained a forensic pathologist to review the autopsy report and photographs. He opined that the cause of death was "consistent with a carotid compression," which occurs when a person uses his forearm to compress the carotid artery in the neck of another person. Peace officers occasionally use this technique to subdue an arrestee. "[Y]ou block blood flow into the head and into the brain without blocking the airway. And the purpose of that is to render the person rapidly unconscious so they can be controlled or handcuffed." If the compression completely obstructs the carotid artery for approximately one minute, the person will die "unless they get defibrillated."

*Impeachment of Appellant by Post-Arrest Silence*

After appellant had testified as to his version of events, on cross-examination the prosecutor asked, "The first that we hear this version as to what happened from you is today;

3

correct?" Appellant answered, "Yes, Ma'am." Appellant contends that the prosecutor used his post-arrest silence to impeach him in violation of the principles of *Doyle v. Ohio* (1976) 426 U.S. 610 [96 S.Ct. 2240, 49 L.Ed.2d 91]. "In *Doyle,* the United States Supreme Court held that it was a violation of due process and fundamental fairness to use a defendant's postarrest silence following *Miranda* warnings[2] to impeach the defendant's trial testimony. [Citation.]" (*People v. Collins* (2010) 49 Cal.4th 175, 203.)

Appellant "did not object on *Doyle* grounds below, and thus has forfeited this claim." (*People v. Tate* (2010) 49 Cal.4th 635, 692.) But appellant argues that defense counsel's failure to object denied him his constitutional right to the effective assistance counsel. The standard for evaluating a claim of ineffective counsel is set forth in *Strickland v. Washington* (1984) 466 U.S. 668, 687 [104 S.Ct. 2052, 80 L.Ed.2d 674]: "First, [appellant] must show that counsel's performance was deficient. . . . Second, [appellant] must show that the deficient performance prejudiced the defense."

Appellant has not shown that counsel was deficient. *Doyle* error occurs only when the prosecutor impeaches "a defendant's exculpatory trial testimony with cross-examination about his or her postarrest silence after receiving *Miranda* warnings. [Citation.]" (*People v. Tate*, *supra*, 49 Cal.4th at pp. 691-692.) The record is devoid of any evidence that appellant was given *Miranda* warnings. Appellant concedes that "there is no mention in the record of appellant specifically being advised of his *Miranda* rights." But he argues that it must be assumed he was so advised because "[s]uch advisements are mandated." We disagree. "A defendant who is never questioned need not be Mirandized . . . ." (*People v. Delgado* (1992) 10 Cal.App.4th 1837, 1843.) Appellant has not referred us to any evidence in the record showing that he was questioned by law enforcement officials. Thus, "we have no basis whatsoever to assume that [appellant] was given his [*Miranda*] rights." (**Ibid**.) "Because there was no sound legal basis for objection, counsel's failure to object to the admission of the evidence cannot establish ineffective assistance." (*People v. Cudjo* (1993) 6 Cal.4th 585, 616.)

---

[2] *Miranda v. Arizona* (1966) 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694].

*Limiting Instruction for Fresh-Complaint Evidence*

Pursuant to the fresh-complaint doctrine, the trial court permitted the prosecutor to present evidence that, several days after appellant's sexual assault, S. complained about it to law enforcement officials.   "[T]he trial court upon request must instruct the jury to consider such evidence only for the purpose of establishing that a complaint was made, so as to dispel any erroneous inference that the victim was silent, but not as proof of the truth of the content of the victim's statement.  [Citations.]"  (*People v. Brown* (1994) 8 Cal.4th 746, 757.)  Appellant contends that his counsel was ineffective because she failed to request a limiting instruction.

To establish deficient performance by counsel, "the defendant must show that counsel's representation fell below an objective standard of reasonableness."  (*Strickland v. Washington*, *supra*, 466 U.S. at p. 688.)  Appellant has failed to make the requisite showing. A reasonable attorney could have concluded that a limiting instruction would be detrimental to appellant because it would highlight the fresh-complaint evidence.  (See *People v. Hinton* (2006) 37 Cal.4th 839, 878 ["Defendant also complains that counsel's failure to request a limiting instruction concerning his prior murder conviction demonstrated ineffective assistance, but counsel may have deemed it unwise to call further attention to it"]; *People v. Ferraez* (2003) 112 Cal.App.4th 925, 934 ["the decision not to request [a limiting instruction] was a reasonable tactical choice by defense counsel to avoid directing the jury to focus on the evidence . . . ."].)

*CALCRIM No. 318*

Appellant maintains that the trial court erred in giving CALCRIM No. 318, which provided: "You have heard evidence of statements that a witness made before the trial.  If you decide that the witness made those statements, you may use those statements in two ways: [¶] 1. To evaluate whether the witness's testimony in court is believable;  [¶]  AND [¶] 2. *As evidence that the information in those earlier statements is true*."  (Italics added.) The Bench Notes to CALCRIM No. 318 state that it should be used "when a testifying witness has been confronted with a prior inconsistent statement."  (1 Judicial Council of Cal., Crim. Jury Instns. (2012) p. 96.)  Appellant argues that the italicized portion of the

5

instruction wrongly informed "the jury that they *could in fact consider* [S.'s fresh-complaint evidence] as proof of the alleged misconduct." (Bold and capitalization omitted.)

The evidence supported the giving of CALCRIM No. 318 because S. had made prior inconsistent statements to Sergeant Kenneth Clark and a social worker. In his opening brief, appellant acknowledges that S. "gave inconsistent accounts" of the incident. On the same day that her mother was killed, S. told Clark that she "went to her parents' bedroom around sunrise," "got into bed with her mother and father," and "slept there." S. did not say that appellant had carried her into the bedroom and had sexually assaulted her. She explained that she had not disclosed this information to Clark because she was embarrassed and scared of appellant.

On the same day that S. spoke to Clark, she told a social worker that she was in her own bedroom when she heard appellant leave the house. At that point, she went into her mother's bedroom and found her mother dead on the bed. S. mentioned nothing about appellant's sexual assault. Two days later, S. told the social worker that appellant had "just touch[ed] her on the surface." At trial, on the other hand, S. testified that she felt "something go inside [her] vagina" when appellant was on top of her.

Appellant is in effect contending that the trial court should have modified the instruction sua sponte to make clear that it did not apply to S.'s fresh-complaint evidence. The contention is forfeited because defense counsel did not object below. "[D]efendant is not entitled to remain mute at trial and scream foul on appeal for the court's failure to expand, modify, and refine standardized jury instructions." (*People v. Daya* (1994) 29 Cal.App.4th 697, 714.)

We reject appellant's contention that defense counsel was deficient because she failed to object. As discussed in the preceding section of this opinion, counsel may have had good reason for not wanting to highlight the fresh-complaint evidence.

### No Duty to Instruct Sua Sponte on Voluntary Manslaughter

Appellant argues that the trial court had a duty to instruct sua sponte on the lesser included offense of voluntary manslaughter. Appellant "submits there was sufficient evidence to warrant sua sponte voluntary manslaughter instructions predicated on either an

6

unintentional killing committed with conscious disregard for human life upon a sudden quarrel or in the heat of passion *or* an intentional killing committed under such circumstances."

" '[T]he factor which distinguishes the "heat of passion" form of voluntary manslaughter from murder is provocation. The provocation which incites the defendant to homicidal conduct in the heat of passion must be caused by the victim [citation], or be conduct reasonably believed by the defendant to have been engaged in by the victim. [Citations]. The provocative conduct by the victim . . . must be sufficiently provocative that it would cause an ordinary person of average disposition to act rashly or without due deliberation and reflection. [Citations.]" (*People v. Manriquez* (2005) 37 Cal.4th 547, 583-584.)

"[A] trial court errs if it fails to instruct, sua sponte, on all theories of a lesser included offense which find substantial support in the evidence. On the other hand, the court is not obliged to instruct on theories that have no such evidentiary support. Accordingly, we . . . consider whether there was substantial evidence in this case to support a verdict of manslaughter based on heat of passion. In our view, [no] such evidence existed here." (*People v. Breverman* (1998) 19 Cal.4th 142, 162.) According to appellant, he applied pressure to T.'s carotid artery because she was "complaining and nagging" that he should stop taking drugs and get ready for work. T.'s conduct was not "sufficiently provocative that it would cause an ordinary person of average disposition to act rashly or without due deliberation and reflection. [Citations.]" (*People v. Manriquez, supra*, 37 Cal.4th 583-584.)

Furthermore, appellant's "testimony contained no indication that [his] actions reflected any sign of heat of passion . . . . There was no showing that [he] exhibited anger, fury, or rage; thus, there was no evidence that defendant 'actually, subjectively, kill[ed] under the heat of passion.' [Citation.]" (***Ibid***.) (*People v. Manriquez, supra*, 37 Cal.4th at p. 585.) Appellant testified that the argument about the car had ended and he and T. had "ma[d]e up." Appellant continued: "We weren't even arguing in the bedroom." "[M]y mind was just focused on I want to do more drugs." "

7

In any event, "[b]y finding [appellant] was guilty of first degree murder, the jury necessarily found [appellant] premeditated and deliberated the killing. This state of mind, involving planning and deliberate action, is manifestly inconsistent with having acted under the heat of passion . . . and clearly demonstrates that [appellant] was not prejudiced by the failure" to instruct sua sponte on voluntary manslaughter. (*People v. Wharton* (1991) 53 Cal.3d 522, 572.)

*Counsel's Failure to Request CALCRIM No. 522*

*and an Instruction on Voluntary Manslaughter*

CALCRIM No. 522 provides: "Provocation may reduce a murder from first degree to second degree [and may reduce a murder to manslaughter]. The weight and significance of the provocation, if any, are for you to decide. [¶] If you conclude that the defendant committed murder but was provoked, consider the provocation in deciding whether the crime was first or second degree murder. [Also consider the provocation in deciding whether the defendant committed murder or manslaughter.]" CALCRIM No. 522 "is a pinpoint instruction that need not be given on the court's own motion." (*People v. Rogers* (2006) 39 Cal.4th 826, 880.) Appellant claims that his counsel was ineffective for failing to request this instruction as well as an instruction on voluntary manslaughter.

Counsel's performance was not deficient because, as explained above, the evidence does not support a theory of provocation. Moreover, as a matter of trial tactics, a reasonably competent attorney could have decided not to request the instructions because they were inconsistent with the defense theory. As counsel explained in closing argument, the defense theory was that appellant was guilty of involuntary manslaughter because he had no intent to kill T. This theory was based on appellant's testimony that he had intended "just to put her to sleep for a while so [he could] continue and use more drugs." " ' "Reviewing courts defer to counsel's reasonable tactical decisions in examining a claim of ineffective assistance of counsel [citation] . . . ." ' " (*People v. Jones* (2003) 29 Cal.4th 1229, 1254.) In any event, appellant has failed to establish the requisite prejudice because he has not shown "that there is a reasonable probability that, but for counsel's [allegedly] unprofessional errors, the result

8

of the proceeding would have been different."  (*Strickland v. Washington*, *supra*, 466 U.S. at p. 694.)

*Abstract of Judgment*

Neither party has directed this court's attention to an omission in the abstract of judgment.  Both parties agree that, as to the indeterminate term, appellant was sentenced to 25 years to life for first degree murder (count 1) plus a consecutive term of 15 years to life for each of the two counts of aggravated sexual assault upon a child (counts 2 and 3).  Thus, the total indeterminate term is 55 years to life.  The abstract of judgment does not show that the indeterminate terms on counts 2 and 3 are consecutive to the indeterminate term on count 1.

*Disposition*

The judgment is affirmed.  The trial court is directed to amend the abstract of judgment to show that each indeterminate term of 15 years to life for the two counts of aggravated sexual assault upon a child (counts 2 and 3) shall run consecutively to the indeterminate term of 25 years to life for first degree murder (count 1).  The court is further directed to transmit a certified copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation.

NOT TO BE PUBLISHED.

YEGAN, J.

We concur:

GILBERT, P.J.

PERREN, J.

9

Lisa M.Chung, Judge

Superior Court County of Los Angeles

_____

Edward H. Schulman, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, Pamela C. Hamanaka, Deputy Attorney General, for Plaintiff and Respondent.